IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 2, 2001

## JOHN H. FRASURE, III v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. P-20018     Bernie Weinman, Judge**

_____

**No. W2000-03106-CCA-R3-PC - Filed January 18, 2002**

_____

The petitioner, John H. Frasure, III, appeals the Shelby County Criminal Court's denial of his petition for post-conviction relief from his guilty plea to especially aggravated robbery, a Class A felony, and theft of property valued over ten thousand dollars but less than sixty thousand dollars, a Class C felony. The trial court sentenced the petitioner as a violent offender to fifteen years in the Tennessee Department of Correction for the especially aggravated robbery conviction and as a Range I, standard offender to three years for the theft of property conviction, to be served concurrently. The petitioner claims that he received the ineffective assistance of counsel because his trial attorney (1) failed to prepare adequately for trial because she did not interview any witnesses for the case and did not hire an investigator to assist with the case; (2) did not subpoena witnesses for a hearing to suppress the petitioner's confession or trial; (3) failed to investigate thoroughly his mental condition; and (4) failed to file a change of venue motion. We affirm the trial court's denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which GARY R. WADE, P.J. and ROBERT W. WEDEMEYER, J., joined.

Howard B. Manis, Memphis, Tennessee, for the appellant, John H. Frasure, III.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; William L. Gibbons, District Attorney General; and Rosemary Andrews, Assistant District Attorney General for the appellee, State of Tennessee.

## OPINION

The petitioner's underlying convictions relate to the theft of a Cadillac and the robbery of the French Quarter Inn in Memphis. The record reflects that the petitioner planned the robbery and waited in a stolen getaway car as his two co-defendants robbed the French Quarter Inn and shot one of the hotel's employees. At the post-conviction hearing, the petitioner testified that his appointed trial attorney was ineffective because she did not get a preliminary hearing transcript. He said that

when he requested that his trial attorney get the transcript, she told him that she could not because she was only being paid one thousand dollars to represent him and the transcript would cost about three hundred dollars. He said that his trial attorney also was ineffective because she did not tell him that she was married to an assistant district attorney. He said that he learned of that fact about thirty days before trial and that when he asked his trial attorney about it, she told him that "it more or less could work to our benefit" and that her husband could be an "inside contact" to the district attorney's office. The petitioner testified that he believed that it was inappropriate for his attorney to be connected to the district attorney's office.

The petitioner testified that he was diagnosed with bipolar disorder in 1990 and that part of his defense was going to be his mental condition. He said that despite this, his trial attorney never obtained copies of his medical records. He said that he gave his trial attorney a list of witnesses to interview but that she did not interview anyone on the list. He said that his two co-defendants pled guilty and that they indicated they were going to testify against him at trial. He said that he and his attorney never discussed how she was going to handle their testimony. He said that his trial attorney never investigated whether any deals had been made between his co-defendants and the state. He said that one of his co-defendants pled guilty to aggravated robbery and received a ten-year sentence.

The petitioner testified that to his knowledge, his attorney did not investigate his case. He acknowledged that his trial attorney requested that he receive a mental evaluation and that Dr. Nichols performed the evaluation. He also acknowledged that his trial attorney filed a motion to suppress a confession that he gave to the police. He claimed, though, that his trial attorney was not prepared for the suppression hearing. He said that at the suppression hearing, the defense was going to argue that the petitioner's confession was coerced. He said that in order to prove that the confession was coerced, the defense needed to show that the petitioner suffered from bipolar disorder. He said that even though Dr. Nichols had not reported the results of the petitioner's mental evaluation, his trial attorney proceeded with the suppression hearing anyway. He said that if his attorney had gotten his medical records as he had requested, then she could have used them at the suppression hearing to show that he suffered from bipolar disorder and that his confession should have been suppressed. He said that his trial attorney also was not prepared for the hearing because she did not have the preliminary hearing transcript, which could have been used to attack the credibility of a state witness who gave conflicting testimony at the preliminary hearing and the suppression hearing. He said that he asked his trial attorney to subpoena two West Memphis police officers to the suppression hearing but that she failed to do so.

The petitioner testified that he asked his trial attorney to file a motion for change of venue because of publicity about the robbery and because one of the victims was a Shelby County court clerk. He said that even though he did not think that he could get a fair trial, his trial attorney told him that there was no point in filing a change of venue motion because the trial court would not change venue. He said that when he pled guilty, the trial court told him that he would have to serve at least eighty-five percent of his sentence. He said that despite what the trial court said, his trial attorney had told him that he would never serve eighty-five percent of his sentence and that he believed her over the trial court. He said that his trial attorney told him that if he did not plead guilty, he would be convicted and sentenced to thirty years. He said that even though the jury had

been selected for his trial, his trial attorney had not prepared a defense and that he decided to plead guilty the day after the jury was selected. He said that if he had known what he knew at the post-conviction hearing, he would not have pled guilty and would have gone to trial.

On cross-examination, the petitioner denied that his trial attorney played an audio tape of the preliminary hearing for him. He acknowledged that his trial attorney gave him copies of all discovery documents. He said that his trial attorney borrowed his copies of the discovery documents and did not return them to him until he wrote a letter of complaint to the Board of Professional Responsibility. The petitioner denied that his trial attorney told him when she was appointed to his case that her husband was an assistant district attorney. He said that he did not know if the relationship between his trial attorney and her husband harmed his case. He acknowledged that Dr. Nichols said that the petitioner was competent to stand trial and that the petitioner could help his trial attorney with his defense. He also acknowledged that Dr. Nichols said that the petitioner was competent at the time of the robbery. He acknowledged that at his trial attorney's request, the state agreed not to prosecute some other cases against him.

Dr. Nichols, a psychologist, testified that he performed a mental evaluation on the petitioner. He said that he interviewed the petitioner for about an hour and reviewed the petitioner's medical records. He said that he determined that the petitioner was competent at the time of the French Quarter Inn robbery and competent to stand trial. He said that an insanity defense was not an option. Dr. Nichols said that the petitioner told him that the petitioner had been diagnosed with bipolar illness in 1989 and that he believed the petitioner had bipolar illness. However, he said that the petitioner was not showing symptoms of the illness when he interviewed the petitioner. He said that the petitioner was extremely bright and verbal and that he did not prescribe medication for the petitioner. He said that he was not asked to evaluate the petitioner's diminished capacity and that he could not give an opinion about it.

The petitioner's trial attorney testified that at the time of the post-conviction hearing, she had been licensed to practice law for seventeen years and that she practiced criminal law exclusively. She said that the prosecutor gave her discovery in the petitioner's case and that the petitioner received copies of all documents. She said that after the petitioner was sentenced, he lost his legal records and wrote her a letter, requesting that she send him another copy of his file. She said that he also wrote a letter to the Board of Professional Responsibility and told the Board that she had never given him a copy of his file. She said that the Board did not force her to give the petitioner a copy of his file but that she did so anyway. She said that the Board did not take disciplinary action against her.

The petitioner's trial attorney acknowledged that she did not get a preliminary hearing transcript, but she said that she and the petitioner listened to audio tapes of the preliminary hearing before the suppression hearing. She said that one of the state's witnesses, who testified at the preliminary hearing, "waffled a bit" in his testimony at the suppression hearing. She said that the petitioner telephoned her several times and told her that he wanted another attorney. She said that the petitioner usually called back the next day and apologized. She said that she told the petitioner

during their initial interview that her husband was an assistant district attorney and that the petitioner had no objection. She said that her husband had no knowledge of this case.

The petitioner's trial attorney testified that at the suppression hearing, the defense took the position that the petitioner had given his detailed confession only because the West Memphis police were pressuring the mother of his children, Dena Shockley. She said that the petitioner told her that he saw Ms. Shockley crying after an interview that Ms. Shockely had with West Memphis police officers. She said that the petitioner was so upset about Ms. Shockley's emotional state that he told the police "whatever they wanted to know" in order to get the police to leave Ms. Shockley alone. She said that the petitioner's mother testified at the suppression hearing that after Ms. Shockley's interview with police, the petitioner was not upset and calmly comforted Ms. Shockley. She said that this testimony was the reason that the trial court denied the petitioner's motion to suppress his confession. She said that the petitioner talked to her about subpoenaing some West Memphis police officers to the suppression hearing but that she did not subpoena them because she did not think the officers' testimony would be relevant.

The petitioner's trial attorney testified that after the trial court denied the motion to suppress, the defense strategy focused on the petitioner's bipolar condition. She said that even though the petitioner was very active in his defense, she requested that he receive a mental evaluation. She said that she told the petitioner that being bipolar was not a defense to the crime. She said that there was no justification for a change of venue motion because there had not been any ensuing publicity about the French Quarter Inn robbery. She said that she did not subpoena any witnesses for trial because there were no witnesses to subpoena. She said that the petitioner gave her a list of West Memphis police officers but that she did not subpoena them for trial because she did not think their testimony would be relevant. She said that she told the petitioner that if the police officers' testimony became necessary during trial that she could have the trial court issue instanter subpoenas.

On cross-examination, the petitioner's trial attorney testified that the petitioner's trial would have been her first jury trial in Tennessee. She said that appointed cases were not a significant part of her law practice. She said that she knew that she could get funding to pay for a preliminary hearing transcript and hire an investigator but that she did not think that a preliminary hearing transcript or an investigator were necessary.

The petitioner's trial attorney testified that she did substantial legal research for the petitioner's suppression hearing and that she made the trial court aware at the suppression hearing that Dr. Nichols had not completed the results of the petitioner's mental evaluation. She said that the trial court decided to conduct the suppression hearing anyway. She said that she had no reason to believe that the petitioner was incompetent and no reason to seek a second opinion about his mental condition. She said that although the state could not convict the petitioner based solely on his co-defendants' testimony, the state was prepared to have Ms. Shockley testify that the petitioner and his co-defendants brought a box to Ms. Shockley's house shortly after the robbery and requested a hammer and a screwdriver. She said that Ms. Shockley was also going to testify that the petitioner was driving a Cadillac that matched the description of the one used in the robbery.

The petitioner's trial attorney testified that she could not locate Sandy Garcia, the victim who was shot during the robbery, and that the petitioner told her that Ms. Garcia was out of state and would not testify at trial. She said that she did not attempt to interview the West Memphis police officers or the petitioner's co-defendants. She said that the petitioner's co-defendants were represented by counsel and that their attorneys had agreed they would not talk to each other's clients. She said that at trial, the defense was going to rely on the petitioner's co-defendants and the victim not testifying. She said she also was going to argue at trial that the petitioner's confession was coerced and that the petitioner was not at the French Quarter Inn during the robbery. She said that when Ms. Garcia showed up at the petitioner's trial, he decided to plead guilty. She said that the fact that one of the robbery victims was a sessions court clerk did not justify a change of venue motion.

The trial court denied the petitioner's post-conviction petition and ruled that the petitioner received the effective assistance of counsel. The trial court believed the testimony of the trial attorney over that of the petitioner, finding that the trial attorney (1) played a tape of the preliminary hearing for the petitioner while he was in jail and (2) told the petitioner that her husband was an assistant district attorney. The trial court stated that the petitioner's trial attorney thoroughly investigated the petitioner's case, developed a defense theory, and was prepared for trial. The trial court also found that a full and thorough hearing was held on the petitioner's motion to suppress and that the petitioner's mental condition was thoroughly investigated. Finally, the trial court determined that the petitioner knew at the guilty plea hearing that he would have to serve at least eighty-five percent of his sentence and that the petitioner entered his plea knowingly and voluntarily.

The petitioner contends that his trial counsel was ineffective because she (1) did not interview witnesses or hire an investigator to assist with the petitioner's case; (2) did not subpoena witnesses for the suppression hearing or trial; (3) did not adequately investigate the petitioner's mental history; and (4) refused to file a change of venue motion even though the robbery was highly publicized and one of the victims was a court clerk. The state contends that the petitioner received the effective assistance of counsel. We agree with the state.

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show that (1) counsel's performance was deficient, and (2) the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989). When a petitioner claims that ineffective assistance of counsel resulted in a guilty plea, the petitioner must prove that counsel performed deficiently and that but for counsel's errors, the petitioner would not have pled guilty and would have insisted upon going to trial. Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the

range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974) and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

In order for a petitioner to succeed on a post-conviction claim, the petitioner must show the allegations set forth in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f). A trial court's findings of fact in a post-conviction hearing are conclusive on appeal unless the evidence in the record preponderates against those findings. See Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990). However, we review the trial court's conclusions of law--such as whether counsel's performance was deficient or whether that deficiency was prejudicial--under a purely de novo standard. Id. at 457. Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. Tenn. Code Ann. § 40-30-203.

The petitioner contends that he received the ineffective assistance of counsel because his trial attorney failed to interview witnesses, did not subpoena witnesses to the suppression hearing or trial, and did not hire an investigator to help with the case. However, despite his allegations that West Memphis police officers and several character witnesses would have offered testimony favorable to his case had trial counsel interviewed them or called them to testify at the suppression hearing or trial, the petitioner did not present the testimony of any of these witnesses. Without any proof at the post-conviction hearing as to the testimony that these witnesses would have offered, the petitioner cannot demonstrate that he was prejudiced by their failure to be interviewed or called on his behalf. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Furthermore, the petitioner failed to offer any proof as to how an investigator could have benefitted his defense. We believe that he is not entitled to relief on this issue.

Next, the petitioner contends that his trial attorney failed to investigate thoroughly his mental condition. However, we agree with the trial court that the petitioner's trial attorney adequately investigated his mental history. The petitioner's trial attorney requested that the petitioner receive a mental evaluation. Dr. Nichols performed the evaluation and testified that the petitioner was very bright and verbal. In addition, Dr. Nichols determined that the petitioner was competent at the time of the offense and competent to stand trial. Dr. Nichols said that he was not asked to determine if the petitioner suffered from diminished capacity and said that he could not render an opinion about it. Again, the petitioner did not offer any proof to contradict Dr. Nichols' findings and did not present any proof regarding a diminished capacity defense. We believe that the petitioner has not demonstrated deficient performance or prejudice and is not entitled to relief.

Finally, the petitioner contends that he received the ineffective assistance of counsel because his trial attorney refused to file a change of venue motion. Although the trial court did not address this issue in its order, we believe that the petitioner has failed to demonstrate that he is entitled to relief. The petitioner testified that he could not get a fair trial in Shelby County because of excessive

publicity about the case and because one of the robbery victims was a Shelby County court clerk. However, the petitioner did not present any proof that a change of venue motion was warranted and he did not demonstrate how he was prejudiced by trial counsel's failure to file a change of venue motion. The petitioner has failed to show that counsel's performance was deficient and that he was prejudiced by the deficiency.

Based on the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, JUDGE